IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| **LEAH TAKATA,** | |
| **Plaintiff,** | Civil Action No. |
| **vs.** | JURY TRIAL DEMANDED |
| **TOPPERS INTERNATIONAL, INC. d/b/a Toppers International Showbar, James Hoyle Everhart (aka "Brick" Everhart) and Darnell Gardner,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Leah Takata ("Takata") brings this Complaint against Defendants Toppers International, Inc. d/b/a "Toppers International Showbar" or "Toppers", James Hoyle Everhart, and Darnell Gardner (collectively "Defendants") as follows:

## INTRODUCTION

1.

This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, by a former exotic dancer employed by Defendants at Toppers International Showbar in Athens, Georgia, for violation of the FLSA's minimum wage pay requirement. Plaintiff alleges that Defendants were her employers, had paid her no wages, and that her sole form of remuneration had been tips from customers.

1

Defendants have also kept portions of her tips in violation of 29 U.S.C. 203 (m)(2)(B).

2.

Plaintiff seeks to recover minimum wages owed, illegal "kickbacks" paid to Defendants, liquidated damages, attorneys' fees and costs and other relief afforded by the FLSA pursuant to 29 U.S.C. §§ 215 and 216(b).

3.

Toppers International, Inc. owns and/or operates an adult dancing club located at 100 N. Jackson Street, Athens, Georgia 30601. It employed Takata as a dancer from November 2022 through January 2024 (the "Relevant Time Period").

4.

Throughout the Relevant Time Period, Defendants required Takata to pay a portion of her tips to its management, supervisors, and/or other employees as a condition of her employment.

**Jurisdiction and Venue**

5.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

6.

Venue properly lies in the Middle District of Georgia under 28 U.S.C. § 1391

because Toppers conducts business in Georgia, within this judicial district and a

substantial portion of the events giving rise to the claims herein arose in this

judicial district.

**The Parties**

7.

Plaintiff Leah Takata resides in Georgia.

8.

Toppers employed Takata as a dancer from November 2022 to January 2024.

9.

Throughout the Relevant Time Period, Takata was an "employee" of Toppers

within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

10.

Toppers is a domestic profit corporation organized under the laws of the State of

Georgia.

11.

Throughout the Relevant Time Period, Toppers was an "employer" of Takata

within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

12.

Toppers is subject to the personal jurisdiction of this Court.

13.

Toppers may be served with process through its registered agent Darnell Gardner at

100 N. Jackson Street, Athens, Georgia 30601.

14.

Defendant Darnell Gardner ("Gardner") is a natural person who resides in Athens-

Clark County, Georgia.

15.

Gardner is subject to the personal jurisdiction of this Court.

16.

Throughout the Relevant Time Period, Gardner was Toppers' CEO, CFO and

Secretary.

17.

Gardner may be served with process at 100 N. Jackson Street, Athens, Georgia or

wherever he may be located.

18.

Defendant James Hoyle Everhart, a/k/a "Brick" Everhart ("Everhart") is a natural

person who resides in Athens-Clark County, Georgia.

19.

Everhart is subject to the personal jurisdiction of this Court.

20.

Throughout the Relevant Time Period, Everhart was Toppers' Manager and exercised control over the terms and conditions of Plaintiff's employment.

21.

Everhart may be served with process at 100 N. Jackson Street, Athens, Georgia 30601or wherever he may be located.

**Enterprise Coverage:**

22.

Throughout the Relevant Time Period, Toppers was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i) and (ii) and (s)(1)(B).  Specifically, Toppers operates a bar and restaurant in Athens.

23.

Throughout 2022, Toppers had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

24.

Throughout 2023, Toppers had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

During 2024, Toppers had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During 2022, Toppers had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A). Such goods include liquor and other beverages which have traveled in interstate commerce.

27.

During 2023, Toppers had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A). Such goods include liquor and other beverages which have traveled in interstate commerce.

28.

During 2024, Toppers had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A). Such goods include liquor and other beverages which have traveled in interstate commerce.

29.

During 2022, Toppers had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

During 2023, Toppers had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

31.

During 2024, Toppers had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

32.

Throughout the Relevant Time Period, Toppers has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

33.

Throughout the Relevant Time Period, in the course of her duties for Toppers, Takata used or handled the following, among others, instruments of interstate

commerce: computers, cash, cash registers, credit cards, credit card machines,

office furniture, office supplies, dishware, glassware, beer, wine, and liquor.

**Corporate Employer Under the FLSA**

34.

Toppers is an adult nightclub whose primary business is to provide entertainment

in the form of semi-nude dancers and the sale of food and alcoholic beverages.

35.

Throughout the Relevant Time Period, Takata worked as a dancer at Toppers under

the stage name "Phoenix".

36.

Throughout the Relevant Time Period, Plaintiff normally worked 4-5 shifts per

week at Toppers.

37.

Throughout the Relevant Time Period, Takata was normally scheduled to work

from 7:00 p.m. until 3:00 a.m. during each work shift.

38.

Throughout the Relevant Time Period, Takata normally worked 32-40 hours

throughout most work weeks.

39.

Throughout the Relevant Time Period, the business operations of Toppers have been conducted through Defendant Toppers.

40.

Throughout the Relevant Time Period, Defendant Toppers has maintained all financial accounts used in the operation of Toppers.

41.

Throughout the Relevant Time Period, Defendant Toppers has paid all costs associated with the advertising, marketing, and promotion of Toppers' operations.

42.

Throughout the Relevant Time Period, Defendant Toppers has provided all facilities used in the performance of Plaintiff's dancer work at Toppers.

43.

Throughout the Relevant Time Period, the work of dancers such as Plaintiff has been an integral part of Defendant Toppers' business success.

44.

Throughout the Relevant Time Period, Toppers' dancers have not been required to have any specialized skills, education, training, or knowledge.

45.

Throughout the Relevant Time Period, Plaintiff has been an "employee" as defined in FLSA § 3(e), 29 U.S.C. § 203(e) in connection with her dancer work at Toppers as a matter of economic reality.

46.

Throughout the Relevant Time Period, Defendant Toppers set the price Plaintiff could charge for dances.

47.

Throughout the Relevant Time Period, Defendant Toppers has been Plaintiff's "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d) as a matter of economic reality.

**Individual Employer Liability of Defendant Everhart Under the FLSA**

48.

Throughout the Relevant Time Period, Defendant Everhart has acted directly or indirectly in the interest of Defendant Toppers in his interactions with Plaintiff, and has controlled the terms and conditions of Plaintiff's employment.

49.

Throughout the Relevant Time Period, Everhart was the Manager of Toppers and was Plaintiff's immediate supervisor.

50.

Throughout the Relevant Time Period, Defendant Everhart had authority and exercised control over the finances and operations of Toppers.

51.

Throughout the Relevant Time Period, Defendant Everhart has exercised ultimate control over hiring and firing Toppers' employees as well as dancers classified as independent contractors.

52.

When a new topless club was opening in the area, Everhart threatened the dancers at Toppers with termination if they danced at the new club.

53.

Throughout the Relevant Time Period, Defendant Everhart has had authority and control over Toppers' policy of classifying dancers as "independent contractors" for tax purposes.

54.

Throughout the Relevant Time Period, Defendant Everhart has had authority over the terms of Plaintiff's working conditions, including all rules applicable to Toppers' dancers.

55.

Throughout the Relevant Time Period, Defendant Everhart has had authority and control over Toppers' policy of having dancers work for tips only.

56.

Throughout the Relevant Time Period, Defendant Everhart had authority and control over Toppers' recordkeeping policies with respect to dancers' hours worked and monies received.

57.

Throughout the Relevant Time Period, Everhart was a manager at Toppers.

58.

Throughout the Relevant Time Period, Everhart exercised operational control over Takata's work activities.

59.

Throughout the Relevant Time Period, Everhart managed the day-to-day operation of Toppers.

60.

Throughout the Relevant Time Period, Toppers vested Everhart with supervisory authority over Takata.

61.

Throughout the Relevant Time Period, Everhart exercised supervisory authority over Takata.

62.

Throughout the Relevant Time Period, Everhart set the requirements of dancers' schedules of working hours.

63.

Throughout the Relevant Time Period, Everhart exercised authority and supervision over Takata's compensation.

64.

Throughout the Relevant Time Period, Everhart had authority to hire and terminate employees of Toppers, including Plaintiff.

65.

When Plaintiff was bruised because of a customer who assaulted her, Everhart refused to permit her to work until her bruises were not visible.

66.

Everhart established and/or enforced a rule that dancers who were deemed "fat" in Everhart's opinion were given two weeks to lose 10 pounds or would be fired.

67.

Everhart terminated Takata when he was told by another dancer that Takata had

complained about his losing 10 pounds in two (2) weeks rule/policy.

68.

Everhart also terminated a dancer who went by the name "Ashlyn".

69.

Throughout the Relevant Time Period, Takata was an "employee" of Everhart

within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

70.

Throughout the Relevant Time Period, Everhart was an "employer" of Takata

within the meaning of FLSA § 3(d), 29 U.S.C. §203(d) inasmuch as he was acting

directly or indirectly in the interest of Defendant Toppers in his interactions with

Plaintiff.

**Individual Employer Liability of Defendant Gardner Under the FLSA**

71.

Throughout the Relevant Time Period, Defendant Gardner has acted directly or

indirectly in the interest of Defendant Toppers in his interactions with Plaintiff, and

has controlled the terms and conditions of Plaintiff's employment.

72.

Throughout the Relevant Time Period, Gardner was the CEO, CFO and Secretary of Toppers.

73.

Throughout the Relevant Time Period, Gardner was an owner of Toppers.

74.

Throughout the Relevant Time Period, Gardner regularly appeared at Toppers to perform duties on behalf of Toppers.

75.

Throughout the Relevant Time Period, Defendant Gardner had authority and exercised control over the finances and operations of Toppers.

76.

Throughout the Relevant Time Period, Defendant Gardner, though Manager Everhart, has exercised ultimate control over hiring and firing Toppers' employees as well as dancers classified as independent contractors.

77.

Throughout the Relevant Time Period, Defendant Gardner has had authority and control over Toppers' policy of classifying dancers as "independent contractors" for tax purposes.

78.

Throughout the Relevant Time Period, Defendant Gardner has had authority over the terms of Plaintiff's working conditions, including all rules applicable to Toppers' dancers.

79.

Throughout the Relevant Time Period, Defendant Gardner has had authority and control over Toppers' policy of having dancers work for tips only.

80.

Throughout the Relevant Time Period, Defendant Gardner had authority and control over Toppers' recordkeeping policies with respect to dancers' hours worked and monies received.

81.

Throughout the Relevant Time Period, Gardner exercised operational control over Takata's work activities through Manager Everhart.

82.

Throughout the Relevant Time Period, Everhart managed the day-to-day operation of Toppers as directed by Gardner.

83.

Throughout the Relevant Time Period, Toppers vested Gardner with supervisory authority over Takata.

84.

Throughout the Relevant Time Period, Gardner exercised supervisory authority over Takata.

85.

Throughout the Relevant Time Period, Gardner, through Manager Everhart, set the requirements of Dancers' schedules of working hours.

86.

Throughout the Relevant Time Period, Gardner, through Manager Everhart, exercised authority and supervision over Takata's compensation.

87.

Throughout the Relevant Time Period, Takata was an "employee" of Gardner within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

88.

Throughout the Relevant Time Period, Gardner was an "employer" of Takata within the meaning of FLSA § 3(d), 29 U.S.C. §203(d) inasmuch as he was acting directly or indirectly in the interest of Defendant Toppers in his interactions with Plaintiff.

**FLSA Minimum Wage Violation**

89.

Throughout the Relevant Time Period, Plaintiff has not been subject to any exemption from the minimum wage pay requirements of the FLSA.

90.

Throughout the Relevant Time Period, Defendants paid Plaintiff no wages whatsoever.

91.

Throughout the Relevant Time Period, Plaintiff's only source of remuneration for her work at Toppers was the receipt of tips from customers.

92.

Throughout the Relevant Time Period, Defendants failed to keep and maintain accurate records of the number of hours worked by Plaintiff.

93.

Throughout the Relevant Time Period, Defendants required Plaintiff to pay specific fees, such as a "house fee," "DJ fee," "house mom fee" and "security fee", as well as "credit card/voucher fees" and "late fees" in order to work on any given shift.

94.

Throughout the Relevant Time Period, Defendants set the amount of the mandatory fees, including "house fees," "DJ fees," "house mom fees," "security fees," "credit

card/voucher fees," and "late fees" which dancers such as Plaintiff were required to pay in order to work on any given shift.

95.

Throughout the Relevant Time Period, the specific amounts that Defendants required Plaintiff and other dancers to pay have varied, but typically totaled $110-$125 per shift, oftentimes more.

96.

The fees described herein constitute unlawful "kickbacks" to the employer within the meaning of the Fair Labor Standards Act and relevant Department of Labor regulations. 29 CFR § 531.35

97.

Defendants' practice of paying Plaintiff no wages violated the FLSA's requirement that minimum wages be paid "free and clear."

98.

Defendants' practice of requiring that Plaintiff pay kickbacks violated the FLSA's requirement that minimum wages be paid "free and clear."

99.

Plaintiff is entitled to recover all minimum wages that Defendant failed to pay to her during the course of her employment accruing within three years of the filing of this Complaint through the end of her employment with Toppers.

100.

Plaintiff is entitled to recover all kickbacks that she was required to pay during the course of her employment accruing within three years of the filing of this Complaint through the end of her employment with Toppers.

101.

Toppers knew or should have known that the Minimum Wage requirements of the FLSA applied to Takata.

102.

Section 6 of the FLSA (29 U.S.C. § 206) requires that Defendants compensate Takata at a rate of no less than $7.25 per hour for every hour worked in a work week.

103.

Defendants knew or should have known that Section 6 of the FLSA requires that Defendants compensate Takata at a rate of at least $7.25 per hour for every hour worked in a work week.

104.

Throughout the Relevant Time Period, Defendants failed to compensate Takata at a rate of $7.25 per hour for each hour she worked.

105.

Defendants willfully failed to compensate Takata at a rate of $7.25 per hour for each hour she worked.

106.

Upon information and belief, in failing or refusing to pay Takata minimum wages as required by the FLSA, Defendants have not relied on any letter ruling from the Department of Labor indicating that Takata was not entitled to minimum wages or they were entitled to keep a portion of Takata's tips.

107.

Upon information and belief, Defendants have not relied on any formal opinion of the Department of Labor indicating that their dancer-compensation policies and practices are permitted under the FLSA.

108.

Upon information and belief, Defendants have not relied on any advice—including but not limited to legal advice— indicating that their dancer-compensation policies and practices are permitted under the FLSA.

109.

Throughout the Relevant Time Period, Defendants have willfully refused to correct their FLSA non-compliance.

110.

Defendants' FLSA minimum wage violations were willful within the meaning of

29 U.S.C. § 215.

111.

Defendants' conduct was not taken in good faith, entitling Takata to all relief

afforded under the FLSA, including the award of liquidated damages in an amount

equal to her unpaid minimum wages and kickbacks pursuant to 29 U.S.C. §§ 215

and 216(b).

112.

Defendants' willful violations of the FLSA entitled Plaintiff to a three-year statute

of limitations pursuant to 29 U.S.C. § 255(a).

**COUNT 1 - FAILURE TO PAY MINIMUM WAGE AGAINST ALL DEFENDANTS**

113.

Throughout the Relevant Time Period, Takata was an employee covered by the

FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29

U.S.C. § 206(a).

114.

Throughout the Relevant Time Period, Toppers failed to pay Plaintiff any wages

and Plaintiff worked for tips only.

115.

Throughout the Relevant Time Period, Toppers required Takata to pay a portion of the tips she earned to management and other employees, agents, and/or owner of Toppers.

116.

By requiring Takata to pay a portion of the tips she earned to management and other employees, agents and/or owners of Toppers, Defendants failed to compensate Takata at an hourly rate above or equal to the minimum wage as required by 29 U.S.C. § 206.

117.

Throughout the Relevant Time Period, Defendants willfully failed to compensate Takata at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

118.

Throughout the Relevant Time Period, Defendants required Plaintiff to pay kickbacks each shift that she worked.

119.

Defendants' practice of requiring Plaintiff to pay kickbacks violated the FLSA's requirement that wages be paid "free and clear."

120.

Because Defendants failed to pay Plaintiff any wages whatsoever, they were not entitled to utilize the FLSA's tip-credit provision with respect to their minimum wage obligations to Plaintiff.

121.

Because Defendants violated the "free and clear" requirement of 29 CFR 531.35—among other reasons—they were not entitled to utilize the FLSA's tip-credit provision with respect to their minimum wage obligations to Plaintiff.

122.

Plaintiff is entitled to recover all minimum wages that Defendants failed to pay her throughout the course of her employment.

123.

Plaintiff is entitled to recover from Defendants all kickbacks that she paid over the course of her employment.

124.

Plaintiff is entitled to recover liquidated damages in an amount equal to her unpaid minimum wages and kickbacks pursuant to 29 U.S.C. § 216(b).

125.

Defendants are liable to Plaintiff for her litigation costs, including reasonable attorney's fees, in accordance with 29 U.S.C. § 216(b).

## COUNT 2 — IMPROPER RETENTION OF TIPS
## 29 U.S.C. 203(m)(2)(B).

### 126.

Throughout the Relevant Time Period, Plaintiff was an employee of Defendants covered by the FLSA and entitled to the tip protections set forth in 29 U.S.C. § 203(m)(2)(B).

### 127.

Throughout the Relevant Time Period, and during each shift worked by Plaintiff, Defendants improperly kept a portion of Plaintiff's tips received in violation of 29 U.S.C. § 203(m)(2)(B).

### 128.

Plaintiff is entitled to recover all of her tips improperly retained by Defendants.

### 129.

Plaintiff is entitled to recover liquidated damages in an amount equal to her improperly retained tips pursuant to 29 U.S.C. § 216(b).

### 130.

Defendants are liable to Plaintiff for her litigation costs, including reasonable attorney's fees, in accordance with 29 U.S.C. § 216(b).

WHEREFORE, Takata respectfully prays:

1.  That her claims be tried before a jury;

2.  That judgment be entered in her favor against Defendants Toppers International, Inc., Darnell Gardner and James Hoyle Everhart, finding Defendants to be "employers" of Plaintiff and that they each have violated 29 U.S.C. § 206's minimum wage requirements as stated in Counts 1 and 2 of this Complaint;

3.  That judgment be entered in her favor against Defendant Toppers International, Inc., Darnell Gardner, and James Hoyle Everhart awarding her due but unpaid minimum wages and an additional equal amount as liquidated damages in amounts to be determined at trial as stated in Counts 1 and 2 of this Complaint;

4.  That judgment be entered in her favor against Defendant Toppers International, Inc., Darnell Gardner, and James Hoyle Everhart awarding her an amount equivalent to the tips retained and/or forced to be paid by Defendants in violation of the FLSA and an additional equal amount as liquidated damages in amounts to be determined at trial as stated in Counts 1 and 2 of this Complaint;

5.  That Plaintiff be awarded reasonable attorneys' fees and expenses of litigation with any and all other costs associated with this action pursuant to 29 U.S.C. § 216(b);

6.  That she be awarded nominal damages; and

7.  For such other and further relief as the Court deems just and proper.

Respectfully submitted,

*Delong Caldwell Bridgers*
*Fitzpatrick & Benjamin, LLC*

1425-A Dutch Valley Place NE
Atlanta, GA 30324
(404) 979-3150
(404) 979-3170 (f)
benjamin@dcbflegal.com
charlesbridgers@dcbflegal.com

*/s/ Mitchell D. Benjamin*
Mitchell D. Benjamin
Ga. Bar No. 049888

*/s/Charles R. Bridgers*
Charles R. Bridgers
Ga. Bar No. 080791

Counsel for Plaintiff